UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| **MICHELLE WEST,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| v. | ) Civil Action No: 1:21-cv-151 |
| | ) |
| **ARBOR HOMES LLC** | ) |
| | ) |
| **Defendant.** | ) |
| | ) |

**COMPLAINT FOR DAMAGES AND JURY DEMAND**

Plaintiff Michelle West, by counsel, for her Complaint against Defendant Arbor Homes LLC, states as follows:

**JURISDICTION AND VENUE**

1. This suit is brought under Title VII of the Civil Rights Act of 1964 (Title VII), 42 U.S.C. § 2000 *et. seq.*, as amended by the Civil Rights Act of 1991, 42 U.S.C. § 1981a *et. seq.*, and the Age Discrimination in Employment Act (ADEA), 29 U.S.C. §621 *et. seq.* This Court has jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. §§1331, 1343(a)(3), and 29 U.S.C. §626.

2. All acts alleged herein were committed within the Southern District of Indiana and venue is proper within this District and Division pursuant to 28 U.S.C. § 1391(b).

**PARTIES**

3. Plaintiff Michell West ("West") is a fifty-seven-year-old female, a citizen of the United States and the State of Indiana, and at all relevant times has been a resident of Morgan County, Indiana.

4. Defendant Arbor Homes LLC ("Arbor Homes") is a for-profit limited liability company, which conducts business within the territorial jurisdiction of this Court from its facilities at 9225 Harrison Park Court, Indianapolis, Indiana 46216.

## WEST'S EMPLOYMENT AT ARBOR HOMES LLC

5. West began working for Arbor Homes in 2010.

6. Arbor Homes was the largest Indianapolis area home builder ranked by permits filed in 2019.

7. West was employed by Arbor Homes as a Sales Manager.

8. West's primary responsibility was to sell lots and homes in designated Arbor Homes neighborhoods.

9. West worked hard for Arbor Homes and sold millions of dollars in Arbor Homes lots and homes.

10. In 2011 and 2012, West was a "Gold Level Award Winner" for exceeding sales of $5 million.

11. From 2013 through 2017, West was a "Platinum Level Award Winner" for exceeding sales of $10 million.

12. In 2018, the last full year that West worked for Arbor Homes, her sales exceeded $23 million, which earned West the prestigious "Diamond Award," – the highest award an Arbor Homes Sales Manager can achieve.

13. West was successful at Arbor Homes despite a "boys club" atmosphere created and maintained by the all-male executive team responsible for managing the Sales Managers.

14. This sales executive team – which included Ryan Woolever (Vice President of Sales), Matthew Kraiger (Regional Sales Manager), and Chris Pickrell (Regional Sales Manager) – mocked female Sales Managers, wagered on employee successes and failures, and referred to women working in the office as "the girls."

15. The sales executive team flirtatiously favored the young Sales Managers by offering to help them put up signs, giving them sales leads, and inviting them to strip clubs.

16. The boys club atmosphere was not limited to abusing employees.

17. The sales executive team also sent text messages and emails disparaging customers using vulgar terms, made fun of customers for asking too many questions, mocked customers with credit problems, and counted down the time until a customer's earnest money would be forfeited.

18. The sales executive team pressured West to engage in heavy-handed sales tactics and even derided her for selling a lower priced home to a customer – one the customer chose and wanted – rather than pushing to customer to a higher priced neighborhood.

19. Throughout West's employment with Arbor Homes, she experienced discrimination on the basis of her sex (female).

20. For example, without limitation, the executive sales team regularly protected Arbor Homes neighborhoods that had male Sales Managers (meaning that other Sales Managers cannot sell in the neighborhood) while not protecting neighborhoods assigned to female Sales Managers.

21. On the rare occasions when West was protected, it was only because she fought, complained, and cajoled until management agreed.

22. Male Sales Managers did not have to engage in such tactics to be protected.

23. The management team also gave sales leads to male Sales Managers that should have gone to West in accordance with Arbor Homes' own practices and applied more restrictive

rules to West than to male Sales Managers, including with limitation, rules regarding customer holds on lots or homes, and chastised her for making accommodations and advocating for customers.

24. West also experienced discrimination on the basis of her age.

25. West is currently fifty-seven years old.

26. This age discrimination included, without limitation, the all-male executive sales team taking leads, spec homes, entire neighborhoods and registered clients from West and assigning them to younger Sales Managers, including without limitation, Haley Plothow.

27. The executive sales team allowed younger Sales Managers to use sales incentives while denying West the ability to use the same incentives.

28. The executive sales team required West to complete tasks not required of younger employees, while making wagers on whether she would complete them on time.

29. West was written up and had spec homes removed from her inventory and given to younger Sales Managers for allegedly not completing administrative tasks.

30. West sent pictures of the front, back, and insides of her spec homes to Ryan Woolever on a Monday.

31. Sales Managers were only required to take pictures of the front and back of the spec – not the interior – West went above and beyond what was required.

32. West contacted Ryan Woolever that Monday (when the photos were due) and told him that she was concerned because she could not get the photos to rotate properly.

33. Ryan Woolever told West to just email him the photos and he would rotate them.

34. West did as she was instructed and emailed Ryan Woolever the photos.

35. That same Monday, West sent Ryan Woolever the photos of both spec homes with interior and exterior photos of each.

36. Two days later, Ryan Woolever gave West's spec homes to Haley Plothow, a significantly younger Sales Manager, for her to sell and told Haley Plothow that he was going to write West up – information that never should have been shared outside the chain of command – and instructed Haley Plothow not to tell West.

37. Ryan Woolever subsequently admitted that he received the photos from one of West's spec homes but alleged that he did not receive the photos for the second.

38. It is common courtesy to respond to somebody and indicate if a document is not attached to an email or if the document was not received, but Ryan Woolever did not do that in this case.

39. Ryan Woolever was bent on getting rid of West and was attempting to create a paper trail top obfuscate and hide his discriminatory intent and animus.

40. Like Ryan Woolever, Matt Kraiger (West's immediate manager) routinely questioned West's customers about whether they had a good experience while not similarly questioning customers of male and younger Sales Managers.

41. Ryan Woolever undermined West to her direct managers.

42. For example, Ryan Woolever sent emails to West's manager accusing her of errors she did not make and contemptuously alleged that she was lying about such minor things as computer errors.

43. Ryan Woolever threatened West with termination over the minor issues, such as being late to one meeting or not immediately knowing the answer to a question about a specific sale.

44. When West reported sales she had made, Woolever questioned the validity of the sales, often mockingly, in emails to West's immediate managers.

45. Male and younger salespersons were not subjected to this same behavior.

46. The executive sales team also attempted to undermine West's relationship with local Realtors who were key to her sales success.

47. For example, Matthew Kraiger told a realtor that West was "fucking stupid."

48. The executive team did not engage in such undermining tactics with male or younger Sales Managers, but rather, assisted them in developing positive relator relationships.

49. On or about September 30, 2019, Chris Pickrell arrived at West's office and announced that he and Sheryl Eickman were writing her up.

50. West did not agree with or accept the false assertions leveled against her and told management the same and refused to sign the "write up" that management brought with them.

51. As such, management refused to give West a copy of the "write up."

52. Following the same pattern of undermining West's relationships with Realtors, Chris Pickrell chose to issue the write up when West had a meeting scheduled with a realtor and a customer.

53. The realtor and the realtor's client were just outside West's office and could hear the entire interaction.

54. This deliberate embarrassment was the final straw for West after years of enduring discriminatory treatment.

55. West refused to accept the untrue allegations in the write up.

56. Chris Pickrell grew loud and tried to intimidate West to sign the document, but she refused.

57. West told Chris Pickrell that, even if the allegations had been true, male employees engaged in worse actions than those of which she was being accused and she believed she was being singled out, treated differently and unfairly.

58. West said she had emails that would prove this differential treatment.

59. At that point, Chris Pickrell ended the meeting and told West she would have to meet with Ryan Woolever.

60. When West arrived at the Arbor Homes office on October 7, 2019 to meet with Ryan Woolever at the company headquarters in Indianapolis, she found Steve Hatchel, Ryan Woolever, and Tina Hartgrove there instead.

61. Steve Hatchel is Arbor's Chief Business Development Officer, one of the highest-level executives in the company.

62. West was expecting to discuss the writeup but quickly learned that Steve Hatchel was angry – not about whether there had been discrimination – but about West having emails that might make Arbor Homes' executives look bad.

63. When their meeting ended around Noon, Steve Hatchel told West to provide the emails by 5:00 p.m. that day.

64. West left and went back to her office in Avon and pulled together and sent what she could find quickly but she could not find everything is such a short time frame.

65. The following day, on October 8, 2019, Steve Hatchell ordered West to return to the Arbor Homes office in Indianapolis immediately.

66. When West arrived, Steve Hatchel angrily demanded to know where the rest of the emails were.

67. West tried to explain that he had not given her enough time to put everything together, but Steve Hatchel interrupted, furiously stating, "I want them now!"

68. West reiterated that she believed she was being treated differently than the men and that she was being treated unfairly due to her sex and age and felt the emails showed that other employees had engaged in inappropriate behavior and were not disciplined.

69. After West reiterated her allegations of discrimination, Steve Hatchel asked her if she wanted to file a formal complaint.

70. West responded that she did want to file a formal complaint.

71. Steve Hatchel then looked at Human Resources Manager Tina Hartgrove and told her to put West on Administrative Leave effectively immediately.

72. Steve Hatchel said West was not to contact any of her customers or attend any meetings.

73. West was to go to her office and find the emails and provide them to him no later than Wednesday, October 9, 2019.

74. West did as she was told and provided all of the emails she could find.

75. On or about Wednesday, October 16, 2019, West received an email from Tina Hartgrove stating that the company had completed an investigation of her complaint and found no discrimination.

76. According to Tina Hartgrove, the emails West presented showed only some "inappropriate" conduct.

77. On or about Monday, October 21, 2019, only a few weeks after West made her complaint of discrimination, Arbor Homes terminated West's employment.

78. When West asked why she was being fired, management told West that she was "no longer a good fit for the company."

79. Although Tina Hartgrove asserted that she had conducted a thorough investigation, this is untrue.

80. In fact, the investigation was perfunctory.

81. Tina Hartgrove did not even interview West.

82. Tina Hartgrove had no interest in and made no effort to ask or understand the complete picture of West's allegations of discrimination.

83. Tina Hartgrove did not follow-up with West after receiving the emails to get the context or understand why West felt they supported her allegations.

84. Upon information and belief, Tina Hartgrove did not interview any other witnesses and was, in fact, on vacation (fall break) during a significant part of the time between receiving the emails and concluding her superficial investigation.

85. By all measures of reasonableness, Tina Hartgrove's "investigation" was insufficient.

86. Further, Tina Hartgrove attended and was witness to the meeting with Steve Hatchel, after which she had to know that Steve Hatchel was angry with West and did not take her allegations of discrimination seriously.

87. Tina Hartgrove was also the Human Resources Manager who carried out Steve Hatchel's order to put West on immediate Administrative Leave.

88. An effective investigation necessitates someone who is objective but, as a mid-level Arbor Homes employee, Tina Hartgrove was simply not able to conduct an unbiased investigation of Arbor Homes' senior-level executives.

89. Plaintiff believes that she was subjected to differential treatment on account of her age and sex and terminated for complaining about workplace discrimination in violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act.

## ADMINISTRATIVE PROCEDURES

90. On or about April 15, 2020, West timely filed a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) under charge number 470-2020-02251.

91. After 180 days had passed since filing of the charge, the EEOC issued a notice of right to sue on October 21, 2020.

92. West has 90 days to file a Complaint after her receipt of the notice, which time has not passed.

## COUNT I – SEX DISCRIMINATION

93. All previous paragraphs are incorporated by reference.

94. During the course of her employment at Arbor Homes, West was an "employee" of Arbor Homes within the meaning of Title VII, 42 U.S.C. § 2000e(f).

95. Arbor Homes employs more than fifteen employees and is an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

96. Throughout the course of employment at Arbor Homes, West was subjected to different standards than similarly-situated male employees.

97. Arbor Homes engaged in unlawful sex discrimination in violation of Title VII of the Civil Rights Act of 1964 when it subjected West to differential treatment on account of her sex, terminated West on account of her sex, and replaced her with a male employee.

98. Arbor Homes has acted with malice or reckless disregard of West's rights under Title VII.

## COUNT II – WILLFUL AGE DISCRIMINATION

99. All previous paragraphs are incorporated by reference.

100. During the course of her employment at Arbor Homes, West was an "employee" of Arbor Homes within the meaning of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 630(f).

101. Arbor Homes employs more than twenty employees and is an "employer" within the meaning of the ADEA, 29 U.S.C. § 630(b).

102. Arbor Homes engaged in unlawful discrimination in violation of the ADEA when it subjected West to differential treatment and terminated West on account of her age.

103. Arbor Homes has willfully and intentionally engaged in discriminatory treatment of West on the basis of age and has acted with malice or reckless disregard to West's rights as an older employee.

## COUNT III – RETALIATION

104. All previous paragraphs are incorporated by reference.

105. Arbor Homes engaged in unlawful retaliation against West in violation of Title VII and the ADEA when it terminated West because she engaged in protected activity and complained that she had been subjected to differential treatment on account of her sex and age.

106. Arbor Homes has acted with malice or reckless disregard of West's rights under Title VII and the ADEA.

107. West has suffered damages as a result of Arbor Homes' unlawful actions.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff prays for the judgment of this Court against Defendant, as follows:

A.   An award of the value of the salary and other employment benefits and opportunities that the Plaintiff would have received if she had not been injured by the Defendant's age and sex discrimination.

B.   Liquidated damages in an amount equal to Plaintiff's lost earnings and benefits because Defendant's violation of the ADEA was willful.

C.   An order directing the Defendant to reinstate the Plaintiff.

D.   In the event the Court determines that it would be inappropriate to direct the employment of the Plaintiff as an employee of the Defendant, an award of damages to compensate the Plaintiff for the losses that she reasonably will sustain as the result of being denied continued employment with the Defendant.

E.   An award of compensatory damages in an amount to be determined by a jury to make Plaintiff whole for the mental anguish, emotional distress, and other non-pecuniary damages that Plaintiff has suffered because of Defendant's unlawful conduct.

F.   An award of punitive damages in an amount to be determined by a jury to punish Defendant for its unlawful conduct which was malicious or undertaken with reckless indifference to Plaintiff's rights and to deter others from similar conduct.

G.   An award of attorneys' fees and costs.

H.   Such other relief as may be just and proper.

Respectfully submitted,

**MACEY SWANSON HICKS & SAUER LLP**

   s/Quincy E. Sauer
Quincy E. Sauer, Attorney No. 27320-49

                                                Attorney for Plaintiff Michelle West

**MACEY SWANSON HICKS & SAUER LLP**
445 North Pennsylvania Street, Suite 401
Indianapolis, IN 46204-1800
Telephone: 317) 637-2345
Facsimile: (317) 637-2369
Email: qsauer@maceylaw.com

## JURY DEMAND

Now comes the Plaintiff, by counsel, and demands that this cause be tried to a jury on all issues so triable.

                      Respectfully submitted,

                      **MACEY SWANSON HICKS & SAUER LLP**

                      _s/Quincy E. Sauer_
                      Quincy E. Sauer, Attorney No. 27320-49
                      Attorney for Plaintiff Michelle West

**MACEY SWANSON HICKS & SAUER LLP**
445 North Pennsylvania Street, Suite 401
Indianapolis, IN 46204-1800
Telephone: 317) 637-2345
Facsimile: (317) 637-2369
Email: qsauer@maceylaw.com